```
        UNITED STATES DISTRICT COURT
         SOUTHERN DISTRICT OF OHIO
              WESTERN DIVISION
```

| | |
|---|---|
| Clarence Carter, | : Case No. 1:96-cv-426 |
| Petitioner, | : |
| vs. | : |
| Carl Anderson, Warden, | : |
| Defendant. | : |

**ORDER**

Before the Court is Petitioner's Motion for Relief from Judgment pursuant to Fed. R. Civ. P. 60(b)(6). (Doc. 74) Respondent opposes the motion (Doc. 79), and Petitioner has replied. (Doc. 80)

Petitioner Clarence Carter is an Ohio death row inmate who was convicted by a jury of aggravated murder, with death penalty specifications of prior calculation and design. The charges were based on a jailhouse fight between Carter and Johnny Allen, who died of injuries from that fight. Carter's petition for habeas corpus relief was denied by this Court in two separate orders (Docs. 47 and 58, Orders of June 3 and November 17, 1998). The second order denied relief on Carter's 19th and 31st grounds of the petition, after an evidentiary hearing was held. The Sixth Circuit affirmed both orders; see Carter v. Mitchell, 443 F.3d 517 (6th Cir., April 6, 2006).

Just after Petitioner's state clemency hearing on May 17,

2007, Respondent's attorneys produced to Petitioner's counsel a transcript of a 1994 interview of Calvin Steele.  Mr. Steele, also known as Stanley Griffin, was a trial witness for the State in Carter's original prosecution.  Steele testified at trial that Carter delivered a "sucker punch" to Allen, suddenly and without warning, that started the fight that led to Allen's death.  Steele testified that Carter returned to his own cell during the attack on Allen and stuck his own leg with a sharp object, then returned and continued to assault Allen.  When Steele asked Carter to stop, Carter told him to stay out of it.

Carter's conviction was eventually affirmed on direct appeal by the Ohio Supreme Court.  Steele was one of several inmates who witnessed the events between Carter and Allen, and who testified at trial under what the Ohio Supreme Court described as a "beneficial arrangement" concerning sentencing on unrelated felony charges.[1]

During Carter's state post-conviction proceedings, Steele signed an affidavit in January 1994 stating that he did **not** see Carter attack Allen, and he did not know how the fight started. This was contrary to Steele's trial testimony.  Steele also declared that he had a motive to testify against Carter, because Carter had killed a friend of his.  The State of Ohio then prosecuted Steele for perjury based on his affidavit.  Steele was

---

[1] State v. Carter, 594 N.E.2d 595, 597 (Ohio 1992).

represented by counsel and pled guilty to that charge in November 1994. At his sentencing, he reaffirmed his trial testimony and disavowed the affidavit. (Doc. 35, Exhibit A)

On December 9, 1994, the day after Steele's sentencing on the perjury charge, two investigators (John Jay and Bill Fletcher) from the Hamilton County Prosecutor's Office interviewed Steele. The transcript of this interview is attached to Carter's Rule 60(b)(6) motion, and forms the basis for the motion. (See Doc. 74, Exhibit A) The transcript starts with Investigator Jay telling Steele that they are trying ". . . to determine if there was any coercion or pressure placed against [Steele] to sign this affidavit, and if so by whom." Steele told them that an investigator from the public defender's office came to see him in prison to review his trial testimony. Steele states that he "... told her I pretty much didn't remember a lot of it, you know. Some pieces I did remember of it, and some I didn't." (Tr. 6) Steele also told the public defender's investigator that the trial was six years ago. He agreed with Investigator Fletcher that his memory was clearer at the trial than it was in 1994 when he signed the affidavit.

When asked why he signed the affidavit, Steele stated: "Well, I mean it wasn't really lying, it was just that I really didn't remember it. I mean, you know, back in '88 it was only probably a few months that had passed before this trial came

-3-

along so, my memories, you know, was real fresh then." (Tr. 8) Steele said he thought he read the affidavit before he signed it, but then stated:

> Like I said pretty much I've forgot a whole, I forgot pretty much all about it. You know, until she comes back, and you know did, did you know how to recant something that has happened over a 6 year span and its virtually impossible to really remember every detail accurately over a 6 year span . . .
>
> I specified it to her that possibly it could have been true and it couldn't have been true. I specified that to her, you know. I might have just misread it, you know, at the time, because you know, I'm incarcerated, you know I'm pretty much under a lot of stress anyway. So at the time I could have just really signed anything because I might not have really read it thoroughly like I should have. That's, you know, pretty much why I'm in this predicament now cause I probably didn't read it like I should have read it.

(Tr. 10-11)

Investigator Fletcher then read Steele some of his affidavit statements, including the statements that he did not see Carter strike Allen, that he did not know how the fight between Carter and Allen got started, and that he had testified against Carter because Carter had killed Steele's friend. Investigator Fletcher asked Steele if he remembered these statements, and Steele said "Some of them I do, and some of them I don't. ... I think pretty much I didn't see really the initial . . .". (Tr. 13) Later on, Steele said he did not even remember giving his trial testimony, and then said "I don't really remember him, you know, hitting

-4-

him. I don't really remember. . . . I mean, you know, like you see something. Then you leave away, and then you come back. But I mean like, if I'm not mistaken. I believe when I got there, that, you know, the altercation was already underway. ... The fight was already underway. But I don't think I remember how it began. Or who hit who first." (Tr. 17) Once again at the end of the interview, Steele confirmed that to the best of his recollection, his trial testimony was true. (Tr. 18)

Petitioner's 19th claim for relief argued that the State used Steele's false testimony (and that of Calvin Johnson, another witness who recanted his trial testimony in a post-conviction affidavit). His 31st claim for relief argued that Carter lacked the mens rea for aggravated murder under state law requiring "prior calculation and design." The Court granted Petitioner leave to take the depositions of Carter's two trial prosecutors, and then conducted an evidentiary hearing on the two claims on November 9, 1998. Petitioner called the two trial prosecutors (Messrs. Crowe and Gebhardt), Calvin Steele, and Calvin Johnson. Steele and Johnson both elected not to testify, raising their Fifth Amendment privileges against self-incrimination.

This Court then denied Carter's 19th and 31st claims for relief: "In light of Mr. Steele's plea of guilty to the charge of perjury related to the affidavit, which constitutes the only

-5-

evidence <u>dehors</u> the record in support of Petitioner's claim that he was convicted on the basis of false testimony from Mr. Steele, the Court concludes that the evidence <u>dehors</u> the record does not support the claim." (Doc. 58 p. 6) The Sixth Circuit rejected Petitioner's argument that this Court should have compelled Steele to testify, noting he had a reasonable fear of prosecution based on his state perjury conviction. See <u>Carter v. Mitchell</u>, 443 F.3d at 539, n. 11.

<u>Petitioner's Rule 60(b)(6) Motion</u>.

Petitioner argues that Respondent should have disclosed the Steele interview transcript to the Court, because it constitutes "evidence <u>dehors</u> the record" that supports Petitioner's claim of actual innocence of aggravated murder. Petitioner suggests that Respondent's former counsel deliberately suppressed this evidence which constitutes fraud on this Court, justifying relief under Rule 60(b)(6).

As an initial matter, the Court agrees (and Respondent does not dispute) that Petitioner's motion is procedurally proper under Rule 60(b), because the motion facially attacks a defect in the integrity of the federal habeas proceedings. See <u>Gonzalez v. Crosby</u>, 545 U.S. 524, 532 (2005).

Rule 60(b)(3) permits the Court to set aside a final judgment based on fraud, misrepresentation, or misconduct by an opposing party. Such motions must be brought within one year of

the entry of the judgment, and is thus unavailable to Petitioner. He therefore seeks relief under Rule 60(b)(6) or (d)(3).

Rule 60 (b)(6) is a catchall provision, permitting reopening of a judgment for "any other reason that justifies relief."  This subsection is intended to cover only the extraordinary, exceptional case that is not covered by the Rule's other subsections, and "[s]uch circumstances will rarely occur in the habeas context."  Gonzalez, 545 U.S. at 535.  Rule 60(d)(3) vests the Court with broad power to set aside a judgment that was procured due to fraud on the court.

Petitioner argues that Respondent acted fraudulently when it withheld production of the interview transcript.  That conduct would fall squarely within Rule 60(b)(3), and arguably cannot form the basis for a 60(b)(6) motion.  However, Petitioner also argues that the alleged misconduct was a fraud on the court, which could form the basis for a (b)(6) motion, and is squarely within the realm of Rule 60(d)(3).

Fraud on the Court.

Respondent filed a "reply" to Carter's traverse on May 7, 1997, which disclosed for the first time in this habeas record the fact of Steele's perjury conviction, and attached the transcript of Steele's guilty plea on the perjury charge. According to Respondent's reply, it was unaware of the perjury charges until after Petitioner took the deposition of Prosecutor

-7-

Crowe on March 24, 1997.  (See Doc. 35) While Petitioner moved to strike the reply and its attachments (see Doc. 36), he did not seek further discovery or produce any evidence that Steele's plea was anything other than voluntary.  It is not clear when Respondent's prior counsel first obtained the Steele interview transcript.  Current counsel for Respondent states he was newly assigned to the file in 2007, and he produced the transcript after the clemency hearing because he was unsure if Petitioner had seen it.

"Fraud upon the court should . . . embrace only that species of fraud which does or attempts to, subvert the integrity of the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication, and relief should be denied in the absence of such conduct."  Demjanjuk v. Petrovsky, 10 F.3d 338, 352 (6th Cir. 1992) (internal quotation omitted).  "Fraud on the court is conduct: 1) on the part of an officer of the court; 2) that is directed to the judicial machinery itself; 3) that is intentionally false, wilfully blind to the truth, or is in reckless disregard for the truth; 4) that is a positive averment or a concealment when one is under a duty to disclose; 5) that deceives the court."  Workman v. Bell, 227 F.3d 331, 336 (6th Cir. 2000).

The Court concludes there is insufficient evidence to raise a reasonable inference that Respondent's failure to produce the transcript prior to this Court's evidentiary hearing amounts to conduct that is intentionally false, willfully blind to the truth, or in reckless disregard for the truth. A careful review of the transcript makes clear that Steele's memory in 1994 of the day of the fight in December 1988 was not very good. He said he could remember that day only "Vaguely, very vaguely." Steele also said "I don't really remember him, you know, hitting him. I don't really remember," and that "The fight was already underway. But I don't think I remember how it began. Or who hit who first." These statements are not an unequivocal recantation of his trial testimony about how the fight started. At best, Steele is telling the investigators that his memory is not good, and that he may or may not have seen the fight start. Steele also frankly admitted that he did not read the affidavit as carefully as he should have, and expressed confusion about what the affidavit actually said. His admission does not undercut or invalidate Steele's voluntary guilty plea to the perjury charge.

Petitioner also argues that Respondent failed to disclose Steele's perjury conviction until after he filed his traverse, suggesting that Respondent was trying to conceal both the conviction and the transcript to gain unfair advantage in the habeas proceedings. Steele's guilty plea was unquestionably

-9-

important to this Court's denial of habeas relief, and the Sixth Circuit specifically noted the plea and Steele's recantation of his affidavit.  But Petitioner was in fact informed of these facts on May 7, 1997 when Respondent filed its reply.  If the interview transcript had been produced at that time, along with the plea transcript, and thus available at the November 1998 evidentiary hearing, it would not have changed the result.  Steele's transcript lacks an affirmative statement that Steele lied when he testified at Carter's trial.  Indeed, Steele reaffirmed his trial testimony during the interview, as he had during his sentencing on the perjury charge.  Furthermore, assuming the transcript had been available to Petitioner at the evidentiary hearing, it provides no basis upon which Petitioner or this Court could force Steele to testify and waive his Fifth Amendment protection.

   Fraud on the court also requires some showing that Respondent had a duty to produce the interview transcript.  Petitioner does not cite any rule requiring its disclosure, or any discovery request asking for such statements.  Petitioner sought and was granted permission to take depositions from the trial prosecutors Crowe and Gebhardt.  Prosecutor Crowe testified at his deposition that he did not remember Calvin Steele, and that he did not know about or remember Steele's post-conviction affidavit.  (Crowe Deposition p. 20) Sometime after his

deposition, Crowe apparently "mentioned in passing" to Respondent's then-attorneys the facts about Steele's perjury case. Those attorneys then obtained the transcript and journal entries of Steele's perjury conviction. (See Doc. 38, p. 2)

Crowe testified at the evidentiary hearing that when he gave his deposition, he was either unaware of the perjury charge or he did not recall it. (Tr. 13) He also testified that after Steele was indicted for perjury, he spoke to the prosecutor handling the case (Mr. Arnold), and also to Investigators Fletcher and Jay about Steele's interview. (Tr. 19-20) Petitioner did not follow up on this statement at the hearing, and did not seek any additional discovery based on the disclosure of the perjury plea. It may well be the case that the interview transcript was available when Respondent filed the perjury plea documents with this Court. But the Court cannot conclude that because the transcript was available that Respondent's counsel had an affirmative duty to disclose it, or worse that the failure to do so was intentional. Crowe's specific reference to the interview during his testimony belies any suggestion of an intentional coverup.

Petitioner suggests that Respondent had a duty to disclose the interview because it is evidence <u>dehors</u> the record, and this Court denied Petitioner relief based on the absence of such evidence. This argument suffers from two defects. First,

Petitioner has not articulated a basis for a duty on the part of Respondent to produce during habeas proceedings every document <u>dehors</u> the record that may exist. Second, the evidence <u>dehors</u> the record must establish some reasonable basis under Rule 60(b) for the Court to set aside its previous judgment and grant further hearing. As discussed above, the Court concludes that the interview transcript does not satisfy this test. While it may have been preferable for the statement to be disclosed, this is not tantamount to an affirmative duty on the part of the State to do so. The Court cannot conclude that Respondent is guilty of committing a fraud on this Court for the failure to produce the transcript.

The same result would apply under the standards enunciated in this Court's Order granting Petitioner an evidentiary hearing. (See Doc. 47 at pp. 176-179) Beyond applying the four-part test of <u>Maupin v. Smith</u>, 785 F.2d 135, 138 (6th Cir. 1986) to determine procedural default and actual prejudice, the Court must consider if this is an "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent. . . ." <u>Murray v. Carrier</u>, 477 U.S. 496 (1986). The Steele transcript does not establish that Carter is actually innocent of aggravated murder. As noted by this Court and the Sixth Circuit, another witness whose testimony is not in dispute (Carroll) testified at Carter's trial that

Carter was the aggressor, and started the fight with Allen. Steele's 1994 interview reveals no evidence establishing that Carter is actually innocent of the charge of which he was convicted.

For all of the foregoing reasons, the Court denies Petitioner's motion for relief from judgment pursuant to Rule 60(b)(6) and pursuant to Rule 60(d)(3).

**SO ORDERED.**

Dated: March 4, 2008              s/Sandra S. Beckwith
                                  Sandra S. Beckwith, Chief Judge
                                   United States District Court